**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHRISTOPHER NEAGLE,            :
                                         Civil Action No. 09-2016 (NLH)
        Petitioner,   :

        v.            :   **OPINION**

J. GRONDOLSKY,                 :

        Respondent.   :

**APPEARANCES:**

Petitioner pro se               Counsel for Respondent
Christopher J. Neagle        Mark C. Orlowski
08795-029                        Assistant U.S. Attorney
Marion Prison Camp           402 East State Street
P.O. Box 1000                  Room 430
Marion, IL 62959             Trenton, New Jersey 08608

**HILLMAN**, District Judge

    Petitioner Christopher J. Neagle, a prisoner currently confined at Marion Prison Camp, in Marion, IL, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241[1] challenging the results of a prison disciplinary proceeding

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

1

regarding events that occurred while Petitioner was incarcerated at FPC Duluth.  At the time the Petition was filed, Petitioner was an inmate at FCI Fort Dix and as such named J. Grondolsky, the current warden of FCI Fort Dix at the time of filing, as the sole respondent in this matter.[2]

For the reasons set forth below, the Petition will be denied.

## I.   BACKGROUND

Petitioner is a federal prisoner serving a federal prison term of 168 months with 4 years of supervised release pursuant to his conviction for Manufacture and Attempt to Manufacture 50 grams or more of Methamphetamine (Mixture), in violation of 21 U.S.C. § 841(a)(1) & § 841(b)(1)(B)(viii), and § 846; and Manufacture and Attempt to Manufacture Methamphetamine (Mixture) in violation of 21 U.S.C. § 841(b)(1)(C) and § 846.  His projected release date is March 4, 2015.

On May 1, 2008, Incident Report Number 1728559 was issued charging Petitioner with three prohibited acts while at FPC Duluth: Conduct Which Disrupts, violation of Code 199; Possession of a Hazardous Tool, violation of Code 108; and Possession of Anything Unauthorized, violation of Code 305.  The incident

---

[2]Respondents note in their brief that as of November 8, 2009, Donna Zickefoose is the warden of FCI Fort Dix and request that warden Zickefoose be replaced as the proper Respondent.  However, since Petitioner has since been transferred to Marion Prison Camp that change is moot.

report states:

> On this date, at approximately 9:22 p.m., the compound officer announced over the radio of a possible contraband introduction by the recycling building. Upon my arrival, [t]he Operations Lieutenant had inmate Neagle #08795-029 and inmate Rybolt #13200-026 in custody. I conducted a search around the building for other inmates. During my search I noticed three black plastic bags behind the brick wall in front of the recycling building. I open [sic] one bag and noticed tobacco inside. The bags were placed in the compound truck and delivered to the Lieutenant [sic] office. I conducted my search and found a Samsung T-Mobile cell phone. The phone was located about four feet from the plastic bags against the Recycling building. The items within those bags included 128 bags of "Midnight Special" tobacco, 27 rolls of "Grizzly" snuff, 4 bottles of creatine, and 8 bottles of "Phillips" vodka.

See Exhibit 4 to the Moran Declaration. Petitioner received a copy of the incident report on May 2, 2008.

The initial hearing was held before the Unit Discipline Committee on May 6, 2008. At the hearing, Petitioner denied the charges set forth against him in the Incident report, stating "I was heading to education. I was nowhere near the stuff." The incident report was then referred to the Discipline Hearing Officer ("DHO"). Petitioner did not request representation or that any witnesses appear at the DHO hearing. At this hearing, Petitioner stated that he did not have contraband and that the cell phone did not belong to him. As stated in the DHO hearing report:

> As stated in the Incident Report that the compound officer announced over the radio of a possible contraband Introduction by the recycling building. Upon staffs [sic] arrival, the operations lieutenant had inmate Neagle # 08795-029 and Rybolt # 13200-026 in custody. Staff

>conducted a search around the building for other inmates. During the search staff noticed three black plastic bags behind the brick wall in front of the recycling building. One bag contained tobacco inside. The bags were delivered to the lieutenants [sic] office. The search continued and staff found a Samsung T-Mobile cell phone. The cell phone was located about four feet from the plastic bags against the recycling building. The items inside the bags included 128 bags of Midnight Special tobacco, 27 rolls of Grizzly snuff, 4 bottles of creatine and 8 bottles of Phillips vodka.
>
>The DHO considered the copies of photos of the items found, the staff members [sic] memorandums [sic] observing the two inmates running by the recycling building and memos stating they found these two inmates in the area and no other inmates. The lieutenants [sic] memo states that, "The above inmates were found behind the safety building. When I arrived to that location both inmates were hiding behind the storage shed, upon stopping and exiting the lieutenants [sic] vehicle I observed both inmates who walked up to me." The Patrol Compound officers [sic] memo stated, "I was conducting routine patrols as compound officer when I spotted two inmates running alongside the education building toward the recycling with large bags of unidentified material. I immediately notified the operation lieutenant via radio."

See Exhibit 5 to the Moran Declaration.

At the conclusion of the DHO hearing on June 2, 2008, it was determined that Petitioner committed Attempted Possession of a Hazardous Tool, Code 108 and Attempted Possession of Anything Unauthorized, Code 305. For the violation of Code 108 Petitioner received the following sanctions: disallowance of 41 days of good conduct time, forfeiture of 40 days non-vested good conduct time, 60 days disciplinary segregation, 1 year loss of visits, and recommended disciplinary transfer. For the violation of Code 305, Petitioner received the following sanctions: disallowance of

14 days good conduct time, forfeiture of 15 days non-vested good conduct time, and one year loss of telephone and commissary privileges.  Petitioner was transferred to Federal Correctional Institution Fort Dix on August 19, 2008.

Petitioner appealed the decision of the DHO to the North Central Regional Office alleging that the evidence in support of the finding was insufficient.  The appeal was denied and on August 4, 2008 Petitioner submitted a Central Office Administrative Remedy Appeal, which was then also denied.

On November 23, 2009, the Northeast Regional Office expunged the Code 108 violation.

## II.  ANALYSIS

### A.  Jurisdiction

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997).  See also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005).  Accordingly, this Court has jurisdiction to hear Petitioner's challenge to disciplinary sanctions.

B.  <u>Petitioner's Claims</u>

Petitioner alleges that he was deprived of liberty without due process of law because he has lost good conduct days as a result of the sanctions imposed by being charged with a Code 108 infraction for the possession of a cell phone which carries stronger legal consequences than a Code 305 violation.  However, Respondents state in their Answer that the Code 108 infraction was expunged from Petitioner's record.  Since the Code 108 infraction is no longer at issue, Petitioner's claims regarding that infraction and subsequent sanctions are deemed moot.[3]

Petitioner, in his reply brief, contests the existing loss of the good time credits resulting from the Code 305 violation and also contests the alleged failure to reverse the sanctions imposed for the Code 108 violation that has subsequently been lifted.

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>Wilwording v. Swenson</u>, 404 U.S. 249 (1971).  Such protections

---

[3]In his reply brief, Petitioner states that he accepts that the Code 108 infraction has been removed from his record but claims that he had not been informed of the expungement and that to his knowledge the sanctions had not been lifted.  For the reasons set forth in this Opinion, in the alternative, even if the infraction were to remain on Petitioner's record, Petitioner's request for a Writ of Habeas Corpus must still be denied.

are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ... In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[4] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

Thus, a prisoner is entitled to an impartial disciplinary

---

[4] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison. Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct. See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and presented documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. Id. at 569-70.

Finally, due process requires that findings of a prison disciplinary official that result in the loss of good time credits must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).[5]

---

[5] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq. See, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning

Here, the disciplinary hearings and resulting sanctions comply with the requirements set forth by the <u>Wolff</u> standard. Petitioner was notified of the charges in advance of the hearing, was given the opportunity but declined staff representation and production of any witness. He was informed of the evidence being used to support the charges against him and the reasoning for the decision was set forth in the hearing reports. Moreover, the evidence presented at the hearing supports the conclusion that the Petitioner and another inmate were seen running with two bags later found to have the prohibited items. As such there is 'some evidence" to support the charges, determination of guilt, and the sanctions imposed. As such, Petitioner was not deprived of due process in connection with the challenged disciplinary proceeding and thus the Court will deny his Petition.

III. <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be denied. An appropriate order follows.

At Camden, New Jersey          /s/ NOEL L. HILLMAN
                               Noel L. Hillman
                               United States District Judge

Dated: JUNE 18, 2010

---

of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).